Ready now to hear Suncor Energy v. EPA, 19-9612. Counsel for Belland, if you'd make your appearance and proceed, please. Thank you, Your Honor, and may it please the Court, Sean Murata for the petitioner Suncor Energy USA. I'll try to reserve around three minutes of rebuttal. The question in this case is whether Suncor's East Refinery and West Refinery are one or two refineries. To answer that question, you have to know what a refinery is. Yet in both its decision letter and in its brief, EPA refuses to define the word or tell us what the essential attributes of a refinery are. EPA's brief, in fact, goes so far as to say the agency never defined the word refinery at any point. But we know the definition of small refinery that Congress used. Congress stated that a small refinery is a refinery with an average daily crude oil throughput of less than 75,000 barrels a day. Nothing in those definitions looks at the integration between two refineries, nor does it require a certain minimum output of gasoline or diesel fuel. Congress instead looked at the inputs, how much oil is being used in the refinery, not how much gasoline is coming out at the other end. And we know from the dictionaries and EPA's own regulations that a refinery is a building and equipment or a facility that takes crude oil and turns it into gasoline and diesel fuel. Let me ask you on your initial premise here. Why couldn't one say that you have put forward these two entities, the East and West entity, as refineries, subject to the small refinery exemption? And the EPA says in response, well you know what, irrespective of what the precise definition is of refinery, what you have put forward as two entities is one small refinery definition and say your one entity emits more than 75,000 barrels per day. Why isn't that a reasonable way to proceed? In other words, under that view, they're saying you're telling me these are refineries, okay, I accept they're refineries, then the only question is are they one or are they two? And they're saying it's one. Well you don't have to define refinery to do that, do you? I think you do because you have to look at these two facilities and at page one of EPA's brief, although they resist the word refinery, they agree they're facilities. And facility is the word that EPA uses in its own definition of the word refinery. And you have to say, all right, what are the essential attributes of a refinery so that I know if it's one or two? How do I set these boundaries? And the way EPA sets the boundaries in its decision letter, and I think this is my second answer to your question, is EPA didn't give you that statement you just said. It said we're going to look at a couple different things when we're setting the boundaries. And it said one of the things we're going to look at is how much gasoline is each one of these producing? But there's nothing in the statute that supports that. Well the statute refers to throughput, and you're using the word input. Right, so the throughput is how much oil is going through the refinery. Right, so it doesn't ask how much gasoline are you producing in the process. Okay, and so that in itself is an error on the part of EPA. It's to look at the actual production. Barrels that went through that resulted in actual production of gasoline or diesel fuel. Right, EPA thought that was relevant. It in fact says, I think twice in its decision letter, we think it's important to look at the gasoline production. But yet what the statute says is look at the oil throughput, and that's the wrong way to look at it. And in fact it's notable that when it comes to defining the word refinery, EPA takes a maximalist approach. It says any facility, including a truck, a vessel, anything where oil is turned into gasoline is a refinery. And so then it turns around in the small refinery definition and says, well we don't really mean that. What they say is we think that definition is informative to some extent, but won't tell us to what extent it has any purpose. And certainly Holley Refiners says it has purpose in the small refinery context. It must be that the refineries that are obligated are also the refineries that are getting the small refinery exemption. So if they're going to take a maximalist approach on what a refinery is, I think they have to live with that when it comes to who's eligible to petition for a small refinery exception. Well why doesn't it become determinative, however, if you're calling these refineries, so you're labeling them as such, and so why isn't it determinative that they say, okay, I don't have to do that analysis. I'll take your word for it. These are refineries. Then my only question is, are they one or are they two? Are they integrated and do I deem them to be one? And if I deem them to be one, then I'm going to apply the standard for small refinery exemption as relates to one entity. So the point I'm making is that you call them refineries, so why do they have to do that step? Well because if they're refineries, there's nothing in the statute that says look at whether they're integrated or not. I think EPA accepts that in 2005 when we purchased these two refineries, they were two refineries even by EPA standards. Rather, it sort of shifted in their view as they became more coordinated or in their view more integrated, and that's when they started looking at the gasoline production at the other end, which the statute says not to do. So the problem here then is this unique factual situation that we're confronting that really isn't identified or probably even thought of when they authored their regulations and definitions. I think it's fair to say that perhaps nobody at Congress or EPA was thinking, what if you have two refineries that are next to each other sitting on I-70, right? But that doesn't mean you can go out and change the regulation or change the statute to meet their view of what constitutes better policy. We're looking at Skidmore deference here, is that right? You're in the Skidmore realm, though I don't think there's particularly much Skidmore deference to give. You're talking about ambiguity, are we not? I don't think there's anything that's ambiguous. I think the definition of refinery is quite clear. It's any facility that takes oil and turns it into gas. Both the East refinery and the West refinery meet that definition. Now you say turns into gas, that's produced. That's right. I thought you didn't want to use produced. Well, I think an essential definition of the word refinery means there has to be some quantity of gas at the other side. That's what a refinery does. And that has to be in the context of the small refinery program because you're obligated based on your gas production. So to be within the ambit of this entire program, you have to be producing some amount of gas. The point is that the quantity of gas is irrelevant. EPA agrees that the East refinery produces 200 barrels of gasoline per day on average. And I'll just go back, Judge Holmes, it's not just our position that they're refineries. The Energy Information Administration, who EPA relies on when it's conducting these analysis, has always accepted that these are two different refineries under two different reporting ID numbers. EPA says, well that's just a vestige of when they were owned by the appendix and 57 of the appendix. And as EIA itself confirms at page 85 of the appendix, they directed us to report these as separate refineries. So it's not just take our word for it. Back in the day though. Back in the day. And so these numbers are assigned and you stay with those numbers. No, Judge Briscoe. In fact, at page 85 what EIA explains is we asked some court on a test basis to do joint reporting. To try to resolve a reporting error because one of the numbers wasn't coming out right. They said, you know, we tried that for a little bit. We resolved it a different way. We instructed Suncor to go back to separate reporting. So EPA's suggestion that these two facility ID numbers are just a vestige and that they're almost just a historical artifact doesn't match up with EIA's own position. Again, at page 85 of the record. Go ahead. Suncor itself didn't do anything for between 2011 and 2018. Couldn't it have been making the same argument back in 2011? I think it could have, Judge Moritz. We didn't apply for, after the Blanken exception. The exception. Yeah, after the Blanken exception ended, we did not seek a small refiner exception. Just as the facilities and Holley refiner didn't during that same period. Then in 2018 when Suncor looked around and both there are more stringent RFS requirements in 2018 because the requirements get more and more stringent every year. And as Suncor saw... You said we decided we're small. I don't think we decided we're small. I think what we decided was there was an undue hardship. Because I think another key point here is to say we're small refineries is not to say that we get the exemption. We also have to prove to EPA satisfaction that there would be an undue hardship from having to comply with the RFS program. So between 2011 and 2018 perhaps we didn't think we met the undue hardship requirement. But as we looked around and as there were increased requirements and as we saw that other refineries in the Denver area were receiving the exception and therefore in a better economic position than Suncor, in 2018 we applied. And of course Holley refiner holds that that's perfectly fine to allow a lapse between those two and then seek it later. So again to hold that we are small refineries is still to present the question of whether there's undue hardship. We explain in our petitions why there is, but it's not as if if you rule for us here that we are guaranteed to get the exception. There's still going to be further analysis that has to take place in accordance with EIA's score sheet and how they go about this. In accordance with all the other exceptions that EPA is considered in the Denver area. You said the statute doesn't define how much oil has to be produced, right? It doesn't define how much gas has to be produced. And it also doesn't define aggregate throughput, right? Which is the criteria for small refineries. Well I think if you take the plain meanings of each of those words, which is the aggregate amount of oil that is put through the refinery on a daily basis on average. Well I mean no, but if we're in the realm of Skidmore deference and let's assume we're dealing with that side of this now and we're come up with a reasonable understanding of what that means. I mean what aggregate throughput means and that the small quantity of gasoline that's produced, is it the ease that produces that? That's just that's just not sufficient for purposes of the analysis that is taking place here. I don't think even my friend from EPA believes that the word aggregate throughput refers to the amount of gasoline coming out at the end. It's how much it was, what are inputs, how many barrels of oil are you using to produce at the refinery? And there's a reason for using aggregate throughput because you determine in the industry how big your refinery is by how much oil is going into it. Because of course you can produce different things out of a barrel of oil that goes into a refinery. You can produce intermediate blend stocks, you can produce asphalt, you can produce gasoline. So that's why when you're looking at a small refinery, how much oil goes into it is the determinative factor. Now I agree that to be a small refinery you have to produce at least one gallon because or else you're not obligated under the RFS program. But whether it's one gap one barrel or 200 barrels is simply irrelevant under the statute. Oh yes absolutely. And let me ask you about the forfeiture allegation that's raised here. Sure. As I understand how things proceeded, the EPA telegraphed that they were considering an integration approach. And in the response of from Suncor's counsel to that, they said well that we don't know what integration has to do with this, this is irrelevant. I'm sort of struggling to understand why you think you can do that. I mean you can argue in the alternative, you can say that you can attack their integration theory, but just saying that and what the seems to me doesn't get, if forfeiture applies here, which I'm going to pursue that question, if the in principle forfeiture applies here, how do you get away with that? I mean just saying that something is irrelevant doesn't help. Judge Holmes, if I had come in here and said you know EPA is just wrong that these two facilities are integrated, look at all this great information I have and I've attached it to my brief for the first time, then I think your forfeiture argument might have some weight to it, right? Because we didn't give EPA the opportunity to give you the information you need. Yes, but I read that to say well alignment on the fact that integration is a theory is irrelevant. It's not alignment on what you need under an integration theory. I mean if they're saying my tentative view is we want to go the direction of an integration theory, isn't it your obligation as a regulated entity to say okay I'm going to tell you later why I think that's wrong, but I'm going to give you everything that relates to an integration theory and tell you why I'm still, these two entities are subject to the small refinery exemption. Isn't that what you're supposed to do? I think Judge Holmes that if I were here saying their integration finding that the technical part of it as a factual matter is wrong, I think that argument has a lot of weight, but we're not making that argument. What we're making the argument is as a legal matter, the factors they considered were wrong as a matter of the statute and as a matter of reason decision-making and on that there has certainly been no forfeiture, unless the court. May it please the court, my name is Caitlin McCusker and I'm here on behalf of EPA. EPA reasonably concluded that the East and West facilities were two parts of a single large refinery, what Suncor itself calls the Commerce City refinery. That finding was well supported by the evidence, including information concerning the process by which Suncor makes transportation fuel and Suncor's own description of its refining operations. So are we looking at an issue of fact or law? Your Honor, EPA believes that you are looking at an issue of fact. It resolved these petitions by looking at the particular facts and of these two facilities and how they made their transportation fuel. In such cases like that, the court should review the EPA's determination under the APA's arbitrary and capricious standard. Suncor completed its purchase of these side-by-side facilities in 2005 with the express goal of integrating their operations. At the same time, it told EPA that it intended to operate the How do you get to integration under the law, under the regulations and the definitions? I mean, I appreciate factually how you got there, but how can you consider integration, quite simply? Yes, Your Honor. The statute makes available exemptions to a refinery that meets the small refinery definition, not parts of a refinery. So in order to adjudicate whether an entity is eligible for the refinery, EPA first needs to ascertain what refinery is seeking exemption. It does that by looking to the facts and the circumstances of the case before it, and it also does that through the lens of the RFS program more generally. So as my colleague noted, RFS obligations attach to the production of transportation fuel, and the small refinery exemption discusses crude oil throughput. And so it's the process by which crude oil is refined into transportation fuel that EPA looks at here. Thirteen years after it completed its purchase of these facilities, for the first time, Suncor petitioned for exemption from its RFS compliance obligations by artificially resurrecting the boundary between these facilities and claiming that single large refineries should instead be considered two small refineries. But the evidence made clear that there was no such boundary. Instead, Suncor operated these facilities together as part of the Commerce City refinery, and the Commerce City refinery is not small. Rather, it processed almost 100,000 barrels of crude oil per day, well in excess of the statutory threshold. So EPA found that Suncor was ineligible for these exemptions. Suncor's argument that the plain language resolves this issue is wrong for three reasons. First, their definition of refinery does not resolve the question presented. In fact, the Commerce City refinery meets that definition and any other reasonable definition of the term. But EPA had to resolve a different issue, how to determine the boundaries of a refinery. As to this specific question, the statute is silent, leaving it to the agency's discretion. In such cases, as I said before, the court should review the agency's decision under the arbitrary commercial standard. I just, I'm struggling to see how you can, why this distinction makes any difference at all between what you're calling defining the boundaries versus just defining the term at all. Well, in order to determine whether a refinery meets the small refinery definition, the first thing the agency has to do is determine what is the refinery. What is a refinery? What is a refinery? Right. What is the definition of a refinery? Sure. Your Honor. Which is exactly what we're talking about. Why didn't, why isn't that exactly what they did? They, they defined it. In informal adjudications like this. Contrary to the, to the general and plain meaning. Yes, Your Honor. In informal adjudications like this, the agency doesn't need to establish all contours of a statutory definition. It only needs to resolve the particular, the particular facts and circumstances here. So this, so this isn't a determination that would tell refineries going forward what level of production or throughput is required to establish integration. This is just a one-off. This is just a unique case that you look at factually that tells us nothing going forward. Is that your view? Yes, Your Honor. There could be different facts and circumstances where that question of whether two facilities are one would be a closer call. But here, if the facts were clear, that Suncor was operating the facilities as one refinery. And in a future adjudication, it would depend on the facts and circumstances presented. What's the implication of the fact that the East refinery produced Finnish oil products of a certain amount? Yes, Your Honor. It's true that the East facility produced some small amount of gasoline and the agency hasn't said otherwise. But this determination didn't turn on finding that the East facility didn't make enough fuel to meet a definition of refinery or that a certain amount of fuel to be considered independent. It's highly fact-specific. And what the agency saw when it looked at the facts here was a de minimis production of transportation fuel as compared to the vast majority of the crude oil that the East facility was processing being processed into intermediate feedstock and sent to the West for further processing. Well, you just called it de minimis, which means that you have classified it. You've said that this doesn't really matter in the scheme of things. I think their argument is that they do produce Finnish products. And so if you're saying that it doesn't matter how much they produce, why doesn't that put them into the ranks of a refinery? Because looking at their process as a whole, the East facility's refining crude oil into all of its refining of crude oil, what you see is that the vast majority of that is made into intermediate feedstock. And you can't really understand that part of its refining if you don't read it in tandem with the West facilities further processing that into transportation fuel. It's that process from crude oil to transportation fuel that the agency looked at as a whole. And I think it could be helpful to look at the history of the East facility to kind of understand this in context. If you look back at 2005, what you see is that East facility was processing roughly the same amount of crude oil, about 30,000 barrels per day. But at that time, it was somewhere it just purchased it, and it was still operating mostly as an independent refinery. And if you look at the chart at page 79 of the appendix, you can see its gasoline production. And there you see that that 30,000 barrels of crude oil per day was being reduced into roughly 15,000 barrels of gasoline. That yield, that 50% yield, is what we'd expect to see of a typical standalone fuels refinery. By contrast, if you look at what was happening in 2018, you see that the East facility was now making 200 barrels of gasoline per day. That's about less than a 1% yield. So where was all that crude oil going? It was all going over to the West facility for further processing. So it seems that Suncor does not really dispute the factual findings that were made. I think our problem here is the difference of the legal conclusions. And you'll have to help me there how and if we should give the legal conclusions of EPA skid more deference. Sure, Your Honor. If the court thinks that the agency was engaged in statutory interpretation, then it does merit skid more deference. EPA began its analysis in its decision letter with the statute. Its determination reflects, as I said earlier, an understanding that the statute makes exemption available to a refinery, a single refinery, that meets the statutory definition, not parts of a refinery. And to adjudicate these petitions, then, EPA needed to determine what the boundaries are of the refinery. What is the refinery that's seeking exemption in order to assess whether or not it's eligible? On that question, the statute is silent and EPA's brainwashing... You have Suncor, I think to Judge Holmes' point, Suncor defined these as separate refineries. And you just said we look to see what they're seeking if these refineries that they are identifying as refineries actually satisfy the regulation, right? EPA looks at the facts and circumstances to ascertain what is the refinery seeking exemption. It's not required to accept a refinery owner's self-designation. But when you look at them separately, you do have the situation where, if you just look at throughput, I will use the regulations word, both of them would qualify as small refineries, would they not? Yes, Your Honor. We don't debate... So aren't you stuck with that? No, we don't believe so because the Commerce City Refinery also meets the definition of refinery. So you still have to determine what entity it is that we're talking about here. And EPA is not required to accept a refinery owner's self-designation, especially when it's belied by all the facts in the record, including its own statements to the agency about how it operates the facilities. And that reveals a reason to think that Suncor's interpretation of the statute is flawed. Their reading is implausible. Under its approach, nothing would prevent refineries, including refineries that have long been accepted as large and single refineries, from evading RFS compliance obligations by artificially dividing their facilities to create separate small refineries, which individually process less than the statutory threshold, which exceeded an aggregate. And under Suncor's interpretation, even if all available evidence indicated that this subdivision was intended only to avoid compliance obligations, EPA would be required to uncritically accept that self-designation. This jeopardizes the program's entire goal of increasing renewable fuel volumes. So there's no reason to think that this is how it works. So kind of this guy's falling argument doesn't really seem to have much relevance, though, to how we interpret the statute and whether you're really defining the term a refinery. Does it? Well, going back to the definition, maybe you need a change in the regulations, maybe you need something, but going forward, but... Well, I think it calls into question whether or not the plain reading that Suncor gives the statute actually holds water. But going back to the definition of refinery, ascribing any definition, plain text or not, doesn't resolve the question here. How about ascribing your definition in 40 CFR 80.2, which you promulgated as part of the RFS program, which this is in the same context. Why can't we use that definition? For the same reason. And that definition is any facility, including but not limited to a plant, tanker, truck, or vessel, where gasoline or diesel fuel is produced. Sure. That's a refinery. Correct, Your Honor. That is a refinery. And in the context of the RFS program, why isn't that persuasive? If not, obviously not controlling, but persuasive. Your own definition. Yes, Your Honor. So EPA took note of the fact that it had to find the word refinery for purposes of the RFS program, excuse me. But that definition, while informative, as EPA said, doesn't resolve the issue because, again, the Commerce City Refinery would meet the same definition. It's insufficiently granular to resolve the question presented by these petitions for exemption, which is how do you determine whether these two side-by-side facilities are operating as separate refineries or whether they're in fact one refinery? Well, by the word any facility, if you say that it's informative, the word any facility certainly informs that you yourself are referring to them as facilities. Any facility where gasoline or diesel fuel is produced. I think you've answered that with your informative regulation. Yes, Your Honor. It's true that they are facilities, but they're not operated as separate facilities. Suncor operates them as parts of a single refinery and it's production of transportation fuel from when it starts processing crude oil until it finishes that into transportation fuel. That process unfolds across the boundary here at the east and then is finished at the west. It doesn't really make sense to look at what's happening in either of these facilities on their own. In 2005, it did, but Suncor modified those operations. It took advantage of economics of scale and efficiency in making one large operation and now it's seeking to evade our compliance obligations by claiming them to be uninterrupted. Before we end, let me ask you what on your forfeiture argument, what specific arguments have they forfeited? Because it's not like they were entirely mute in terms of talking about their response. Of course, they said it was irrelevant, the integration theory, but then they went on to talk about it some. So what is the distinction between what they said in their email and what the argument is that's presented here that would give rise to forfeiture? Yes, Your Honor. On the specific question of how these vehicles can extract crude oil and process it into transportation fuel, on that particular question, Suncor refused to provide any information, even at EPA's invitation. It's on that factual determination that we think Suncor should be barred from contesting EPA's conclusion. Under any standard of review, though, Suncor has failed to show that this determination was arbitrary, capricious, or contrary to law, and this court should deny the petition for review. Thank you. Thank you. We'll give you a minute. Thank you, Your Honor. The small refinery exception is how the smallest refiners who are relying on an exemption from the Renewable Fuels Program to relieve themselves of undue financial burdens conduct their business operations. To do that, you have to know how you're going to fall within the exemption, because that's how you make determinations about how you're going to conduct your business. But yet in the decision letter, on brief, and at the podium today, EPA's position is, eh, we know a refinery when we see it. We'll take into account a lot of different information. To this day, EPA can't say that if we went back to making a thousand barrels a day at the East Refinery, or 2,000 barrels of gasoline at the East Refinery, or 5,000 barrels of gasoline at the East Refinery, whether we would be back to being a refinery once more. The clearer and more predictable and easier way through this case is to rely on EPA's own definition and the plain language definition, which is a refinery is anything that takes oil and turns it into transportation fuel. Thank you. Thank you. That is the last case for the morning. Thank you for your fine